We're going to move now to case number four, Dordevic v. Paloian. This is appeal 22-2500. And Mr. Bolton, we're going to begin with you. Stephen Bolton May it please the Court, my name is Stephen Bolton. I represent Jorgovanka Dordevic in this appeal, Your Honor. I'll dispense with the facts with the permission of the Court. I would like to move right to the main legal issue of the case, which is the standard of proof. And our position on that, Your Honor, is that if you look at the Supreme Court case in Grogan and the cases that have followed it that have considered the issue, they look at a weighing process, balancing the various interests of the parties in trying to determine what the standard of proof should be. Our contention is that when you look at the allegations of the complaint and you look at the theory of the case of the trustee, that this case quite plainly is one of constructive trust, that they are actually asking the Court to go in and take a woman who has an operating agreement that establishes her 50% interest, which that document was not questioned at trial, and essentially revamp that operating agreement to place that interest in the debtor on allegations of fraud, that the debtor had essentially fraudulently put her own money into this transaction by only using the name of Jorgovanka, her mother, in order to hide that asset from creditors. So if we're looking at it as based in fraud and a court trying to change the ownership structure of an existing transaction, to us, Your Honor, that sounds completely in constructive trust, which unquestionably under the precedence of this Court and Illinois law is a clear and convincing standard due to the equitable nature of the relief being granted. Is that argument you're making for this case only or is it to apply all over our circuit for all cases? I don't think it should apply to every case, Your Honor, because if you look at Grogan, they're saying based upon the various instances of the case. For example, in the Myers case, which we don't think is at all opposite in this case at all, Your Honor, but Judge St. Eve even recognized the balancing and said, well, and this guy's already got an embezzlement judgment against him, and this is an unrolled judgment from Minnesota, there's no question about the balancing here, he's already got a judgment against him. So we believe, Your Honor, that it is a bit of a, depending on the nature of the claim being made by the trustee as to where it fits under state law in order to supply the burden of proof. And I would note, Your Honor, that in paragraph 27 of the complaint, the trustee himself even speaks in terms of a resulting trust. That language is right in the complaint. So our position is that even the trustee recognized that this is essentially a trust situation. I would also state that, well, the Fifth Circuit currently views it as clear and convincing. There is an Eighth Circuit case that looks at it as clear and convincing. And one of the rationales for avoiding that and rushing to a preponderance, which we feel is improper, we think preponderance is becoming a little too widespread in the law, but that's for the courts to decide, Your Honor, is that, well, there's a new mechanism because of the passage of the Bankruptcy Code. But under the Bankruptcy Act, as the Maggio Supreme Court case we cited in our brief showed, the entire action of the trustee to enforce turnover is really a gloss upon the Bankruptcy Act. And when you look at Section 542 of the Bankruptcy Code, there's no new mechanism involved that suddenly creates some different balance, some different burden of proof. There's only the statement that all people holding property must give it in to the trustee. So there is no new mechanism in the Bankruptcy Code. So the relevant case law, such as Gorin's, which is a Seventh Circuit case, which stated that there was a clear and convincing standard for turnover actions, which was completely ignored. I'm sorry, Your Honor. Which was completely ignored both in the Bankruptcy Court and the District Court and in the trustee's briefing. Somehow the Gorin's case doesn't exist when it's binding precedent of this court. It must be addressed. And not only do we feel that the Gorin's case must be addressed, we feel it's right when you look at the other case and you look at the nature of the claim being made. This is not replevin. This is not trying to seize property. Replevin's a chattel action. Replevin is only a person who has unquestionable title can take possession. This is not, as it was in Myers, a, Myers was a post-judgment collection proceeding. Well, under Illinois law, Your Honor, we didn't cite it in our briefs, but I'm well aware of it. I had this issue before Judge Wood below a couple of years ago. You cannot pierce a corporate veil in a post-judgment citation proceeding. So in Myers, which was a post-judgment Illinois citation proceeding upon an enrolled judgment, they can't grant equitable relief. They would send these parties, file a new lawsuit asserting a constructive trust, and when that lawsuit comes around, that's going to be under a clear and convincing standard. The reason we think it's so important, Your Honor, is when you look at the evidence of the case, I'll only make three quick points on the evidence as I see my time is running. There are agreements between Nick Zarech and George Ivanka predating this bankruptcy where they're talking about a nominee and a security interest and everything else. The judge acted like that had no impact at all. He argued against the validity agreements, but that's trees and forest. The forest is that why are these agreements even here under Judge Castling's theory of the case that this was just a straight fraud. Also, witnesses for the trustee contradicted themselves so often it just became repetitive. So we feel that when that standard of proof is applied below, it dramatically changes the burden of the case, and given the evidence of this case, it should have been found in favor of the defendant. I thank Your Honor's list of questions. Very good. You'll reserve the remainder of your time. We'll now hear from Mr. Medeiros. May it please the court, my name is Andrew Medeiros, counsel for the Appellee Gus Pololian as trustee for the bankruptcy estate of Jelenia Dordevic. This is a case where the debtor placed a membership interest for a Florida LLC in the name of her mother, George Ivanka Dordevic, to avoid creditors and due to her immigration issues. The Florida LLC involved a construction of a factory to produce injectable pharmaceuticals. Before this, the debtor owned and operated a trucking company that grossed approximately $3 million per year with over 100 trucks until the trucks mysteriously disappeared. It's undisputed that the debtor transferred $773,000 to the Florida project from her businesses. Whereas George Ivanka lives with the debtor, is employed as a cook earning $36,000 per year, shares a single bank account with the debtor, cannot read, write, or speak English, and is claimed as a dependent on the debtor's tax returns. George Ivanka did not have access to hundreds of thousands of dollars to invest in the Florida project, nor was she sophisticated enough to even understand the basics of manufacturing pharmaceuticals or constructing a factory. Ultimately, the court should affirm the bankruptcy court and the district court for four reasons. First, credibility determinations are rarely overturned on appeal, which is why this appeal is frivolous. George Ivanka, nevertheless, persists in arguing the testimony of George Ivanka and the debtor was direct, consistent, and not contradicted. But the bankruptcy court specifically held that, quote, throughout her bankruptcy case, the debtor has repeatedly demonstrated to the court her propensity for prevarication and evasion, even when under oath, in an apparent attempt to place the assets beyond the reach of creditors. The court, therefore, gives no weight to her testimony, end quote. Is there any evidence in the record that the appellant contributed anything to the project? There was no admissible evidence that the appellant contributed anything. I'll get into it later, but there was—she alleged that she had transferred $112,000— her son in Serbia had transferred $112,000 in cash to the other—her co-conspirator, Zarek, Zarek's father. But there was no evidence at all. There was no receipt or anything evidencing this transfer, and the court gave no weight to George Ivanka's testimony. The bankruptcy court also found the testimony of George Ivanka and the debtor's ex-lover, Nikola Zarek, each had the financial motivation to shade the truth, and neither of them could give coherent explanations of crucial documents. Nevertheless, George Ivanka continues to push a fraudulent narrative by re-arguing facts and credibility issues previously ruled upon by the bankruptcy court and affirmed by the district court. Second, the bankruptcy court correctly determined that the preponderance of the evidence standard was the appropriate burden of proof for turnover cases. This court last year, in the analogous case Kelly v. Stenevich, relying on bankruptcy law, stated, quote, unless the governing statute or rule specifies a higher burden or the Constitution demands a higher burden because of the nature of individual interest at stake, proof by a preponderance of the evidence will suffice, end quote. The Kelly court also stated that although it was a case involving a state law turnover order, the balance of the interest between the parties remains the same as with federal bankruptcy proceedings. Bankruptcy codes sections 541 and 542 do not specify a higher burden. George Ivanka is not an innocent third party drawn into unfair litigation, and her interest in the sales proceeds is not particularly important. George Ivanka is the debtor's dependent and shares a single bank account with the debtor. Kelly also made it clear that George Ivanka's citations to the 1929 and 1948 cases of Maggio and Orell and cases relying on that like Gorin's are no longer good law. Both Maggio and Orell involve cases where individuals face imprisonment for civil contempt for failing to comply with the now outdated turnover procedures superseded by the current bankruptcy code. George Ivanka is not facing jail time. This is a dispute over money which the court has determined should be subject to the preponderance of the evidence standard. The third reason to affirm is that trial George Ivanka presented no admissible evidence of a transfer directly from herself to the Florida LLC. She relies entirely on her self-serving testimony and her son's testimony that $112,000 was physically transferred in Serbia not to the Florida project and not to the debtor. In any event, there is no written evidence of this alleged money delivery of $112,000, plus her co-conspirator Czaric testified to a completely different story regarding the money transfer. The bankruptcy court correctly rejected George Ivanka's fraudulent story and found that George Ivanka did not make any investment in the Florida project. The fourth reason to affirm is that George Ivanka argued for the first time ever in her reply brief that Illinois law should apply or that this was a case involving a constructive trust. This argument was not made to the district court and was not made in her initial appellate brief. It is therefore waived. The bankruptcy court actually first looked at Florida law and then applied federal common law to determine if George Ivanka was the debtor's nominee, a legal issue not challenged by George Ivanka previously in this appellate process. In sum, the trustee respectfully requests that this court affirm the bankruptcy court and the district court and impose sanctions against counsel for continuing to argue an unsupported version of the facts doomed to fail based on the bankruptcy court's reasonable credibility findings. This appeal is also frivolous because after the court's Kelly opinion last summer, counsel cannot argue in good faith that the outdated cases of Maggio and Orell are still good law in the Seventh Circuit. Counsel failed to cite Kelly in its openings brief despite the district court's reliance on it in its opinion. Ultimately, this appeal wastes judicial resources and hurts debtors' creditors. It has been very costly to the bankruptcy estate to continue to deal with their alternative version of the facts that the bankruptcy court properly rejected. Unless your honors have any further questions, I will concede the rest of my time. Thank you, Mr. Medeiros. Mr. Bolton, let's recognize you for rebuttal argument. I will be brief and make a few points, Your Honor. First of all, with regard to the Kelly case, let us not forget that the Kelly case was brought as a collection action under the Illinois Code of Civil Procedures, Section 1402. It wasn't even a bankruptcy 542 action. So the idea that that is somehow binding precedent on the court as it's tried to assert by the trustee is a little bit suspicious. Second of all, Your Honor, as we go to that in great detail in our briefing and our response to the motion, Your Honor, and I won't regurgitate it, as far as the evidence, Your Honor, not only did Jorge Banca testify to the transfer of $112,000, so did her son testifying from Serbia by Zoom, so did Nick Zaric, and we presented to the court the bank statements showing three deposits that exactly totaled $112,000 made by Nick Zaric in response to the money being tendered to his father. And I also, as we've stated before many times in American securities law, there's no requirement that the actual person buying securities hand over the money to the seller of a security, otherwise a lot of brokerage houses would be out of business, Your Honor. Mr. Bolton, what you're doing, and tell me I'm mistaken, you're describing testimony and evidence that the appellant offered, okay, but you have judicial findings that, you know, I'm looking right at them, that this testimony was describing, you know, something that is far-fetched. This testimony is all over the map, right? You've got to grapple with those, you know, the story was told, in other words, to a court. Of course, this makes no sense at all. She has no interest in this project. Well, Your Honor, I fully understand that was Judge Castling's determination based upon those facts. I don't argue with that at all. I'm simply saying that when you look at the record and you look at the testimony of these people, they described a very concrete transaction where Jorge Ivanka gave $112,000 as a payment because Mr. Zarisch was here in the United States. She gave it to her son. Mr. Zarisch then gave the same amount, $112,000, into the PHMX Bank to the debtor's company, and the debtor's company immediately transferred that same amount, $112,000, right down to Florida. We're trying to say this is a step transaction, Your Honor. I don't think it's specious. I don't think it's specious at all to say that it was a bit of a step transaction, Your Honor. No one's describing that. No one's doubting that. But the point is that all of these points line up. Judge Castling simply didn't want to see it that way, in our opinion, Your Honor. I'm not criticizing the judge much. I just think he was mistaken because we also have to remember that the trustee is under, in our opinion, is under a clear and convincing standard. Essentially, there has to be almost no doubt about this. And when we look at some of the other evidence of the testimony of the case, the witnesses are saying that their witnesses are contradicting themselves all over the place. But our point about that transaction, Your Honor, is that those points all line up to form one transaction. We disagree with the court that that is the proper conclusion. We believe that under a clear and convincing standard, he should have taken a different view of that, a more questionable view towards the trustee's case.  As far as the cases being outdated, Your Honor, I made the argument before, Your Honor, that there's no new mechanism in 542. There's been no gigantic reset of bankruptcy law here. Once again, the Gorin's case of this court standing precedent saying there's a clear and convincing standard in turnover cases is not even mentioned. Somehow it doesn't exist, which we find puzzling to this day. And as far as the fact of our contentions, Your Honor, we have been asserting a clear and convincing standard right along in this case. The judge simply rejected it, in our view, on dicta from Myers, which was not on this. And now the trustee is seeking sanctions on Kelly, which isn't even a bankruptcy case. With that, Your Honor, unless there are further questions, I'll end my argument. Thank you, Mr. Bolton. Thank you, Mr. Medeiros. The case has been taken under advisement.